# STATE v. FREEMAN.

No. 5737.   Decided August 28, 1937.   (71 P. [2d] 196.)

126

*Willard Hanson, Stewart M. Hanson,* and *J. R. Haas,* all of Salt Lake City, for appellant.

*Joseph Chez,* Atty. Gen., and *Zelph S. Calder,* Deputy Atty. Gen., for the State.

LARSON, Justice.

Appellant, in the district court of Salt Lake county, was found guilty of involuntary manslaughter, and appeals. On

April 2, 1934, a complaint was filed before Hon. Vere L. Mc-
Carthy, city judge, charging defendant, Thomas Freeman,
with the crime of involuntary manslaughter.  On April 9,
1934, an amended complaint was filed charging the same of-
fense on the same facts, but in two counts.  Defendant was
arraigned on this complaint and on May 2d appeared before
Hon. C. F. Dalby, one of the city judges, and waived pre-
liminary examination.  Judge Dalby ordered defendant
bound over to the district court, but made no written order
to that effect, and made no indorsement on the complaint or
warrant, holding defendant to answer.  Later, on May 2d,
Hon. M. J. Bronson, another judge of the city court, made
a statutory indorsement on the original complaint, holding
the defendant to answer in the district court, and the tran-
script of docket in the city court, over the signature of Judge
Bronson, together with the files, were then sent to the dis-
trict court.  On May 11, 1934, an information was filed in
the district court charging defendant, in two counts, with
involuntary manslaughter, substantially as set forth in the
amended complaint.  Defendant demurred to the informa-
tion, and also moved to quash the same on the grounds that
he had neither been given a preliminary hearing nor been
properly bound over and committed to answer by a magis-
trate having authority.  The motion to quash was denied,
and the demurrer overruled by the district court.  Defendant
then entered a plea of not guilty, and the cause came on for
trial, February 5, 1933.  Defendant then, by leave of court,
withdrew his plea of not guilty and filed an amended mo-
tion to quash the information and an amended demurrer to
the information, both of which were by the court denied and
overruled.  Defendant again entered a plea of not guilty.
Trial was had, and a verdict returned finding defendant
guilty on the first count in the information.  Defendant then
interposed a motion to vacate and set aside the verdict, a
motion in arrest of judgment, and a motion for a new trial,
in each of which he urged, inter alia, that the district court
was without jurisdiction because he had never had a pre-

liminary hearing, never waived a preliminary hearing before Judge Bronson, and had never preen properly committed by a magistrate having authority. In support of this contention, defendant, for the first time, filed affidavits setting up the matter upon which he relied to impeach or dispute the record and files set up from the court of the magistrate. These affidavits, by defendant, his counsel, and the deputy clerk of the city court, were to the effect that defendant had never been brought before Judge Bronson, had never had, or waived, a preliminary hearing before Judge Bronson, and had therefore never been properly held to answer in the district court to the charge. The State offered in evidence the minute record of Judge Dalby's division of the city court, written May 2, 1934, but not signed by Judge Dalby until 1935, after the trial of this cause in the district court, to show defendant was bound over by Judge Dalby, and not Judge Bronson. The district attorney then stated that defendant had never been before Judge Bronson, and defendant frankly admitted he had, before Judge Dalby, waived a preliminary hearing. The trial court then denied the motion to vacate and set aside the verdict, the motion in arrest of judgment, and the motion for a new trial. Sentence was imposed, and defendant appeals. We have set out rather in detail the procedural steps taken in the cause, as appellant's principal assignments of error go to the question as to whether he was ever bound over and held to answer in such a manner that the district court acquired jurisdiction.

Four questions are presented on this appeal, although there are more assignments of error, presenting the same questions, as they arose at different times and in different forms during the course of the trial. The propositions are: (1) Defendant was never held to answer in the district court by a magistrate having authority, and therefore the district court never acquired jurisdiction to hear the cause; (2) the court erred in admitting in evidence the ordinance of Salt Lake City with respect to speed limits upon the street where the accident occurred; (3) the court erred in admit-

ting in evidence the testimony of L. K. Gillet with respect to the speed of an automobile which passed 3 blocks north of the accident; (4) the court erred in giving the jury instruction No. 17. We will discuss them seriatim.

(1) The right of the district court to try any one for a felony rests upon the filing in such court of a proper indictment by grand jury, or the filing of a proper information by the district attorney, or other proper counsel for the state. R. S. Utah 1933, 105-17-1. And such information can be filed properly, only after the accused has been duly bound over and held to answer in the district court by a magistrate having jurisdiction to investigate the charge and determine if there is probable cause to believe an offense has been committed and that defendant is guilty thereof. Constitution of Utah, art. 1, § 13; *State* v. *Hoben,* 36 Utah 186, 102 P. 1000; *State ex rel. Barnes* v. *District Court,* 36 Utah 396, 104 P. 282; *State* v. *Pay,* 45 Utah 411, 146 P. 300, Ann. Cas. 1917E, 173. And before the defendant can be so bound over and held to answer by the magistrate, he is entitled to a preliminary hearing, unless, with the consent of the State, he waives such hearing, which under the Constitution, the statutes, and authorities cited supra, he may do. And if defendant waives preliminary hearing, he thereby, impliedly at least, agrees that the evidence the State would produce would be sufficient to justify the magistrate in holding him to answer in the district court; he thereby consents that he be held for trial, and that no witnesses need be produced. *State* v. *Mewhinney,* 43 Utah 135, 134 P. 632, L. R. A. 1916D, 590, Ann. Cas. 1916C, 537; *Stuart* v. *People,* 42 Mich. 255, 3 N. W. 863; *Latimer* v. *State,* 55 Neb. 609, 76 N. W. 207, 70 Am. St. Rep. 403; *State* v. *Byrd,* 41 Mont. 585, 111 P. 407; 16 R. C. L. 318, 319. Said the Supreme Court of Iowa, in *Cowell* v. *Patterson,* 49 Iowa 514:

"It follows that in such case no examination should be held. The defendant must be considered as admitting, for the purpose of dispensing with the examination, and for no other, that the testimony, if taken, would be sufficient to justify the magistrate in holding him."

And the Ohio court says:

"The sufficiency of the evidence to warrant the court in binding over the defendants could be made to appear as well by their admission to this effect as by the examination of witnesses. This admission the defendants could make, notwithstanding the plea that they were, in fact, not guilty. Such must have been the purpose of their express waiver of an examination; it could have no other effect." *State* v. *Ritty*, 23 Ohio St. 562, and cited with approval in the Mewhinney Case, *supra*.

And by waiving a preliminary hearing, the defendant waives all formalities and all irregularities in the proceeding prior to the filing of the information. *U. S.* v. *Ruroede* (D. C.) 220 F. 210. The right to a preliminary examination is merely the right to have evidence produced in support of the complaint, and to produce evidence in answer thereto, so the magistrate may determine whether an offense has been committed, and if there is probable cause to hold defendant for trial, and if defendant does not desire to have it, he may waive it, and if he waives it, he cannot thereafter claim that he should have had it. The waiver is as broad as the privilege, and when he waives, he is barred from questioning informalities or making technical objections to the regularity of the proceedings. He is thereafter estopped from asserting, in any subsequent proceeding, anything he could have asserted had the examination taken place, and he cannot claim a discharge because no examination was held. *State* v. *Spencer*, 15 Utah 149, 49 P. 302; *Benjamin* v. *State*, 25 Fla. 675, 6 So. 433; *People* v. *Sutherland*, 104 Mich. 468, 62 N. W. 566.

Appellant admits that he waived his preliminary hearing before Judge Dalby, a judge of the city court, and ex officio magistrate, but complains that the information recites that he was bound over and held to answer by Judge Bronson, before whom he did not waive. That defendant may dispute and contradict the recitals in the information, and in the magistrate's record as to having or waiving a preliminary hearing, is settled law in this jurisdiction.

*State* v. *Gustaldi,* 41 Utah 63, 123 P. 897; *State* v. *Springer,* 40 Utah 471, 121 P. 976. When defendant, in the district court, moved to quash the information on the ground he had not been given and had not waived a preliminary hearing on the charge embraced within the information, he raised a question of fact. The situations may present two points: (1) That no preliminary hearing was in fact given or waived, or (2) that the offense charged in the information is not the same as in the complaint, or one included therein. The latter fact is generally determined by an inspection of the complaint and the information. The first point, which is the one seriously urged here, usually requires the taking of extrinsic evidence. The record does not show that defendant filed any affidavits or offered any testimony in support of his contentions. The court had before it the transcript of the docket over the signature of Judge Bronson, reciting that defendant had waived preliminary hearing, and was bound over. This record, while it may be contradicted, imports verity, and in the absence of proof to the contrary, must be controlling. The trial court, therefore, at the time of its ruling denying the first motion to quash, was on the record before us not in error, *State* v. *Mewhinney,* 43 Utah 135, 134 P. 632, L. R. A. 1916D, 590, Ann. Cas. 1916C, 537; *State* v. *Cano,* 64 Utah 87, 228 P. 563, and the record is the same upon the amended motion to quash the information, filed and by the court denied, the morning the cause was called for trial.

Appellant then urges that Judge Bronson made an indorsement on the original complaint, and not on the amended complaint, which had been filed before the waiver of preliminary examination, and therefore the order indorsed by Judge Bronson, holding defendant to answer, shows on its face it was a charge embraced within a complaint which had been superseded and was therefore not a valid complaint on which he could be held to answer. But the statute does not contemplate that the complaint forms the basis for jurisdiction in the district court. That

court, as indicated above, acquires its right to proceed from the "binding over" of the defendant, his being held to answer, by a magistrate. True, the magistrate is required to indorse on the complaint, if he holds the defendant to answer, an order to the following effect:

"It appearing to me that the offense in the within complaint mentioned (or any offense according to the fact, stating generally the nature thereof) has been committed, and there is sufficient cause to believe the within named A. B. guilty thereof, I order that he be held to answer to the same." R. S. Utah 1933, 105-15-19.

It is then provided that the magistrate must transmit to the district court the warrant, the complaint, the depositions, if any, "together with a certified copy of the record of the proceedings as it appears on his docket." R. S. Utah 1933, 105-15-32. It is clear that the magistrate need not hold the defendant to answer to the charge specified in the complaint, but may hold him for any offense embraced therein. It also seems evident that the statement in the statute "the offense in the within complaint mentioned" is merely for convenience in designating the offense for which he is held. The transcript of the docket showed the filing of an amended complaint which, along with the original, was transmitted to and was before the district court with the transcript of docket showing the waiver of preliminary examination after the filing of the amended complaint. It is evident, and was to the district court, from an inspection of the documents, that the offense mentioned in the original complaint, and the offense mentioned in the amended complaint, was the same identical offense. The amended complaint merely stated in two counts the matters which had been commingled in one count in the original complaint. No new element, no new offense was introduced or charged. The original complaint charged involuntary manslaughter and alleged defendant had caused the death of Nielsen by reckless driving of his automobile, and by driving while under the influence of intoxicating liquor. The amended complaint

simply stated the two elements in separate counts. The two mentioned the same offense, and the information given thereby to the district court and the district attorney was the same in this case regardless of which complaint carried the indorsement.

Furthermore, we are of the opinion that the controlling matter is what the transcript of the docket shows, rather than the indorsement on the complaint. *State* v. *Mewhinney,* supra; *State* v. *Gustaldi,* supra; *State* v. *Ritty,* supra. Since the record discloses no further evidence and no showing of facts to contradict or impeach the transcript, we cannot say the district court was in error when it made its ruling denying the motion to quash.

After trial had and verdict returned against defendant, he moved to vacate and set aside the verdict, and also to arrest judgment, on the ground he had not been given or waived a preliminary hearing before Judge Bronson. According to the record, it was at this stage that for the first time proof was offered to contradict the recitals in the record from the magistrate. It is the almost uniform rule that such motions or attacks, made after plea or after trial, are unavailing as made too late. *State* v. *Gustaldi,* supra. *State* v. *Hay,* 52 Utah 80, 172 P. 721; 16 C. J. 345; *State* v. *Norman,* 16 Utah 457, 52 P. 986; *State* v. *Spencer,* 15 Utah 149, 49 P. 302; *State* v. *Dean,* 69 Utah 268, 254 P. 142; *State* v. *Leek,* 85 Utah 531, 39 P. (2d) 1091. Had the showing made after trial been made before plea, the ruling of the trial court thereon would probably have been different. But even after trial, when showing was made, appellant frankly admitted, and now admits, that he had personally waived a preliminary hearing before Judge Dalby, a committing magistrate. Admitting so much, how is his condition, his rights affected, how is he in any worse condition, because the record thereof was signed by Bronson instead of Dalby? In waiving the preliminary examination, he waived everything in the nature of formalities, form, or regularity of the proceeding prior to appearance in the

district court, and having voluntarily waived, the law takes that as the equivalent of a hearing had, and a commitment thereon, based upon all proper showings. Shall a defendant be permitted to waive his hearing; consent and in legal effect join in a request that he be held to answer, and then after trial and conviction be heard to say:

"I waived my preliminary hearing, for reasons which seemed to me good and sufficient, and now after trial and verdict against me, I demand all this be set aside, because of some technical defect in the transcript of the proceedings before the magistrate, which in no way has affected my rights, my trial, or my defense."

We are not willing to subscribe to that doctrine. Appellant assails the action of the trial court in permitting witnesses to testify that defendant did waive his preliminary hearing before Judge Dalby, and as to what was done there, supplementing the record. This was not error. *State* v. *Cano*, 64 Utah 87, 228 P. 563. The first proposition must therefore be held against appellant. In what we have thus said, we do not mean to approve as good practice what was done here. The magistrate should see that his records are properly made and certified; that proper indorsements or orders are entered by him, and his records, in felony cases, by him certified to the district court. A failure so to do is made a misdemeanor by the statute. Magistrates should, for the protection of themselves, parties to actions, and the honor of their office, avoid hap-hazard and slip-shod methods. When the question of a preliminary hearing is raised before plea in the district court, the district attorney and the court should each resolve doubts on the facts or record in favor of the accused, and while it is yet timely and involves no appreciable expense or long delays, either have the record amended to conform to and show the facts, or remand the cause to the magistrate for hearing or preparation of proper records. All we hold here is that defendant, admitting he did waive preliminary hearing, cannot on this record avail himself of technical defects or irregularities in the record,

after trial, where no proof thereof as made prior to trial appears in the record.

(2) This brings us to appellant's assignments with respect to the admission in evidence of the city ordinances with respect to speed and traffic on the street where the accident occurred. Appellant's position is that since the ordinance was not pleaded in the information in haec verba, or by title and date of passage, or by reference to section numbers, it could not be received in evidence. This is no doubt the rule, where the action itself is predicated and founded directly upon the violation of the ordinance. But where general allegations of negligence are made, an ordinance, like any other material fact, may be admitted in evidence for the purpose of showing negligence or recklessness, whether pleaded or not. It is then merely another fact in evidence bearing on negligence and not the foundation or basis of the claim. The State's charge is not founded on the ordinance, and it was therefore unnecessary to plead it. The existence of the ordinance was only a fact bearing upon the conduct of the driver of the car, and, whether the defendant was guilty of negligence or recklessness at the time and place, resulting in the death of Nielsen, depends upon all the facts legally bearing upon his action. If defendant was driving his car in violation of law at the time, such fact is competent evidence in support of the charge of negligence and recklessness. *Goodwin* v. *Chicago, R. I. & P. R. Co.,* 75 Mo. 73; *Lynn* v. *Chicago, R. I. & P. R. Co.,* 75 Mo. 167; *Jaquith* v. *Worden,* 73 Wash. 349, 132 P. 33, 48 L. R. A. (N. S.) 827, and note.

Said the Supreme Court of Minnesota in *Faber* v. *St. Paul & M. M. Ry. Co.,* 29 Minn. 465, 13 N. W. 902, 903:

"The objection cannot be sustained. The fact that the rate of speed at which the train was run was prohibited by the municipal law was competent evidence going to prove negligence, * * * and being evidence of the fact pleaded it might be proved, although the existence of the ordinance had not been alleged in the complaint."

"The defendant claims it was an error to admit in evidence the ordinance of the city of Buffalo prohibiting the running of the en-

138

gines within the city at a rate of speed exceeding six miles an hour. The exception was upon the grounds that the ordinance was not pleaded, and was incompetent, irrelevant, and immaterial. It was offered as mere evidence on the question of negligence. Evidence should not be pleaded. The testimony * * * shows the engine was running nine or ten miles an hour. I think it cannot be inferred that the deceased was just as liable to be killed if the engine had been running at the rate of six miles as at ten miles an hour. Therefore the evidence was competent." *Oldenburg* v. *New York Cent. & H. R. R. Co.* (Super. Buff.) 9 N. Y. S. 419, 422; *Cragg* v. *Los Angeles Trust Co.*, 154 Cal. 663, 98 P. 1063, 16 Ann. Cas. 1061; *Borneman* v. *Chicago, etc., R. Co.*, 19 S. D. 459, 104 N. W. 208; *Meng* v. *St. Louis & S. W. R. Co.*, 108 Mo. App. 553, 84 S. W. 213; *San Antonio St. R. Co.* v. *Mechler* (Tex. Civ. App.) 29 S. W. 202; *Opitz* v. *Schenck*, 178 Cal. 636, 174 P. 40; *Ponca City* v. *Reed*, 115 Okl. 166, 242 P. 164; 4 Nichols Applied Evidence p. 3421.

It follows, therefore, that the admission in evidence of the ordinance was not error.

(3) Appellant's third point assails the admission in evidence of some testimony of L. K. Gillet, a witness for the State, and covers assignments of error 12 and 13. The witness testified that at about the time of the accident he was traveling south on Second West St. at about 35 miles per hour; that at 9th South St. another car traveling ▮ about 60 miles per hour passed him going south; that as it passed him it swayed nearly off the road on the east or left side; that no other cars passed going north or south between 9th South and the scene of the accident, which was about two block further south. The objection was to the witness being permitted to answer these two questions:

"Now, will you describe to us, in as detailed manner as you can, the manner in which this car passed you? How fast would you say that this car was traveling that swayed to the east side of the road, as it passed you after you left 9th South?"

The point is urged that neither the witness, nor any other witness, described the car as to color, type, or make, or described the driver; it was just referred to as "the car that

passed," and it was in no wise connected with the defendant, or with the accident, except the fact that no other cars met or passed the witness while he was traveling the two blocks from 9th South to the scene of the accident. No contention is made that there is any lack of evidence to connect defendant with the accident, but only that there is no connection shown between defendant and the car about which the witness testified. This evidence was received before the death of Nielsen had been shown, and before any evidence was offered connecting or tending to connect defendant with the accident or placing him at the scene. The district attorney said he would connect this car with defendant. The court, in overruling the objection of defendant, stated that if it were not connected up, defendant could move to strike it. No effort was made by the State to further connect the car with defendant, except to show that at approximately that time the defendant, driving from the north, struck and killed Nielsen. Defendant made no motion to strike, but did offer a request for an instruction to the jury relative to the testimony of Gillet. We cannot say that the court was in error in the ruling made. Such matters were near enough, in time and place, to be not subject to an objection of remoteness. 1 Nichols Applied Evidence 636; *Traynor* v. *McGilvray*, 54 Cal. App. 31, 200 P. 1056. When the district attorney said he would connect the car with defendant, the court was not in error in admitting the evidence with right to defendant to move to strike it, if not connected up. No such motion was made by defendant. He requested an instruction to the jury to disregard the evidence of the witness, Gillet, on certain matters. Such an instruction is a comment on the weight of the evidence, and instructing the jury as to what they must do with respect to the evidence before them, and the court was not in error in refusing to give such instruction. It was not the equivalent of a motion to strike the evidence, to withdraw it from the jury. If the admission of the evidence was error, it was not such as to require a reversal, since defendant did not move to strike it. *State* v. *Siddoway,*

61 Utah 189, 211 P. 968; *State* v. *Nell*, 59 Utah 68, 202 P. 7; *State* v. *Cluff*, 48 Utah 102, 158 P. 701; *State* v. *Barone* 92 Utah 571, 70 P. (2d) 735.

(4) This brings us to defendant's final point, claimed error in instruction 17. That instruction was in two paragraphs, the first stating in paraphrase form the duty, under the law, of drivers of automobiles as to lights, maintaining a proper lookout, and as to keeping the car under proper control. Appellant argues that there was no allegation or evidence of defective lights, therefore, proper lights are assumed, and the mention of lights may have misled the jury. Bear in mind that the first paragraph of the instruction is just a statement of the duty of drivers of cars on the highway, and the instruction concludes: "You are further instructed, that if you shall find and believe beyond a reasonable doubt that the defendant failed to keep and maintain a proper lookout ahead as he was traveling south on Second West prior to the accident, and that as a proximate result of his failure to keep and maintain such proper lookout, Emanuel Nielsen was killed, then you should find the defendant guilty of manslaughter as charged in the first count of the information." The instruction is not subject to the infirmities urged against it.

Appellant's other assignments pertain to matters involved in the second count, and, since the verdict on that count was in defendant's favor, they are not argued, and, indeed, should not be considered.

We find no error in the record, and the judgment of the court below is affirmed.

FOLLAND, C. J., and HANSON and MOFFAT, JJ., concur.

WOLFE, Justice (concurring in part, dissenting in part).

I concur in the answer to propositions 1 and 4. As to number 1, I agree that the record showed a commitment by a magistrate having authority and that this record should have sooner been impunged by extrinsic evidence to upset

its imported verity. I think, too, that the "binding over" is what gives the district court the right to proceed. If from the record it is evident that he was bound over on the charge in regard to which he is informed against, the fact that there may have been an irregularity in the manner in which such binding over is shown is not fatal. There must be evidence in the record that he was bound over on the offense he is charged with, and, if the offense has not changed by an amended complaint, the fact that the recital respecting the binding over refers to the same offense contained in a complaint which has not been altered in substance by the amendment sufficiently apprises the district attorney and the district court of the offense charged and in respect to which he had a preliminary hearing or which hearing he waived.

As to the second proposition, that an ordinance not relied on as the basis of negligence and not mentioned in the complaint may be introduced in evidence as "bearing upon the conduct of the driver," I think it is subject to qualifications. If the negligence charged is based on the violation of an ordinance or statute, it makes no difference whether as an actual fact there was negligence. The violation of the ordinance is negligence per se or prima facie, depending upon holding of the jurisdiction. But I ask myself what materiality or ordinance prohibiting driving above a certain speed has in a case where the negligence charged is common-law negligence and depends actually upon whether in fact there was negligence. Certainly, driving more than 25 miles per hour, where the ordinance prescribed that as a limit, may or may not actually in fact be negligence. In law it is negligence, but to rely on the legally made negligence, it should be charged as such. The cases say it is "competent evidence in support of the charge of negligence," or that it was "admissible as bearing on the question of general negligence," or like expressions. But I have seen no case which seems to have analyzed such general statements of competency. They seem to be dogmatically made. If some opinion

of a traffic or safety expert to the effect that more than 25 miles was generally an unsafe speed to drive within certain sections of the city were offered, it would not be accepted as evidence. An ordinance fixing a maximum speed limit does not purport to say that a greater speed would in all cases be negligence in fact, but only that as a general protective measure greater speeds are prohibited. Thus, all that is involved by the introduction of such an ordinance as evidence of actual negligence is that in the opinion of the governing body of the city more than 25 miles per hour was an unsafe speed—nay, perhaps it does not rise to the level of an implied opinion. It may be that the commission which passes the ordinance simply set that speed as a maximum as a general protective measure and because there were enough occasions when it would be dangerous to exceed it so as to set it as a maximum. But if it is an opinion, it could not be introduced in this way, and an opinion that 25 miles within the city was a limit beyond which no one could safely drive would hardly be admissible in an action based on actual negligence. The question would be what was a proper speed consistent with due care at the place and time of the accident. It might be only 5 miles. I have great difficulty seeing how such an ordinance bears or supports an allegation of negligence in fact. But there are a number of cases supporting the rule that it is admissible and some against it. Note, 16 Ann. Cas. 1064, which seems to show a weight of authority according to the number of jurisdictions cited in favor of the rule. But in *Jaquith* v. *Worden*, 73 Wash 349, 132 P. 33, 36, 48 L. R. A. (N. S.) 827, decided in 1913, later than the above-mentioned note, it is stated that the weight of authority is against the rule, although this case decided in favor of the rule. This case said the ordinance "may be admitted in evidence like any other fact or circumstance material to the subject-matter of the action." But I have difficulty seeing how a maximum speed limit set by law is itself a material circumstance to the question of whether the speed at which the driver was going was under all the circum-

stances actual negligence. I can see how in proof of general reckless driving or in support of some broad allegation of negligence, it might be shown that a person did some act which was prohibited without alleging the violation of the ordinance as a basis for its introduction, but in such case, the act prohibited would itself be one of the facts of actual negligence. Thus, if some one were charged with negligently driving through an intersection and it was shown that he drove through a red light in violation of law, that act would itself be part of the set of circumstances constituting the general reckless driving, but speed above or below 25 miles per hour might or might not be part of such set of circumstances. If so, it should be proved as an actual fact negligent under the circumstances, not by introducing an ordinance setting that speed as a legal maximum. The fact that it is a legal maximum is not in itself proof of actual negligence. If some city commission should see fit to make 5 miles per hour the maximum, I can hardly think that the introduction of the ordinance as bearing on the conduct of the driver would be admissible if it were alleged he had been going 10 miles per hour. After all, the alleged conduct of the driver is or is not a fact regardless of the ordinance.

It may be that the State is correct in contending that the ordinance was sufficiently pleaded when it was set out in the information "that the speed limit on said highway south of 9th South is twenty-five miles per hour." The ordinance does not need to be set out in words, and there is authority that where a violation is relied on as the negligence, a reference to such ordinance in substance, without reference to title, section, number, or date of passage, is sufficient. *Yahnke* v. *Lange*, 168 Wis. 512, 170 N. W. 722; *Van Goosen* v. *Barlumn*, 214 Mich. 595, 183 N. W. 8; *Louisiana Ry. & Nav. Co. of Texas* v. *Humphreys* (Tex. Civ. App.) 285 S. W. 869. In these cases, the acts alleged to constitute negligence had coupled with them the allegation, "in violation of ordinance of a city." This was deemed sufficient in a complaint in a civil action. An allegation "that the speed limit on said

highway is 25 miles per hour" would seem to apprise the defendant sufficiently that there was an ordinance so limiting the speed. It would either have to be a state law or an ordinance, and if the former, it would not in any case even have to be referred to in substance.

In view of the fact that my associates have concurred fully in the opinion of Mr. Justice Larson, I deem it profitless to do more than point out my doubts in the above matters without further explanation.

I think the requested instruction to disregard the evidence of Gillet was equivalent to a motion to strike such evidence. If a motion to strike had been made and granted, I think the court should have instructed the jury that the evidence was out of the case and to ignore it. The court stated that it would permit the evidence to go in subject to be stricken if not connected up. It may have had no duty to keep in mind its ruling admitting the evidence conditionally or to keep track of the evidence in sufficient detail to inform itself whether it had been connected up, but when counsel refreshed its recollection by requesting the instruction that the jury ignore such evidence, the court should have of its own motion stricken it. After it had admitted the evidence conditionally and was apprised that the condition had not been met, the court should have acted to prevent incompetent evidence from being considered. I think this failure to strike such evidence and instruct the jury to ignore it was in this case reversible error, for it appears that the jury might have been and probably was materially influenced by this incompetent evidence, and the defendant was prejudiced thereby.