473 P.2d 388

**STATE of Utah, Plaintiff and Respondent,**

v.

**Reggie McGEE, Defendant and Appellant.**

No. 11964.

Supreme Court of Utah.

July 31, 1970.

Brian R. Florence, Florence, Hutchison & Sharp, Ogden, for defendant-appellant.

Vernon B. Romney, Atty. Gen., Lauren N. Beasley, Joseph P. McCarthy, Asst. Attys. Gen., Salt Lake City, for plaintiff-respondent.

CALLISTER, Justice:

Defendant appeals from his conviction, upon a jury verdict, of the crime of grand larceny. He was sentenced to an indeterminate term in the Utah State Prison. .

Defendant asserts that the denial of his motion for a second preliminary hearing upon appointment of new counsel constituted a violation of his "due process rights." Defendant contends that his trial counsel was at a serious disadvantage because he was not present to hear the evidence at the preliminary hearing, although defendant concedes that trial counsel did consult with the attorney who had represented him.

The trial court ruled that defendant was timely accorded a preliminary hearing and was represented by competent counsel, experienced in the practice of criminal law. The court denied the motion on the ground that it was without legal basis and was factually unnecessary.

Defendant has misconstrued the purpose of the preliminary hearing and assumed that it is a discovery device.

* * * The right to a preliminary examination is merely the right to have evidence produced in support of the complaint, and to produce evidence in answer thereto, so the magistrate may determine whether an offense has been committed, and if there is probable cause to hold defendant for trial, * * *.[1]

We agree with the trial court that there is no legal basis upon which to hold that

1. State v. Freeman, 93 Utah 125, 132, 71 P.2d 196 (1937).

due process requires attendance of the same counsel at the preliminary hearing as represents defendant at trial.

█ Defendant contends that trial judge, Glen J. Mecham, should have disqualified himself on the ground that he was also presiding magistrate at the preliminary hearing. Furthermore, defendant asserts that Judge Mecham was acting in the capacity as a judge pro tempore and that under Article VIII, Section 5, of the Constitution of Utah, the parties or their attorneys of record must agree to the trial of the cause before a judge pro tempore. Defendant denies such consent.

Prior to defendant's trial Judge Norseth had a heart attack. Judge Mecham, a city judge, was temporarily *assigned* as a district judge; he was not acting as a judge pro tempore. Section 78–3–15, U.C.A. 1953, provides that a cause may be tried by a judge pro tempore. Section 78–3–16, U.C.A.1953, permits the parties to limit the power, by stipulation, of the judge pro tempore to specified issues. Section 78–3–17, U.C.A.1953, provides that judges pro tempore shall serve without compensation from any public treasury.

Article VIII, Section 3, of the Constitution of Utah, provides:

Judges of the supreme court and district courts shall be selected for such terms and in such manner as shall be provided by law, * * *.

Pursuant to the foregoing section, the Legislature enacted Sections 78–3–20 and 78–3–21, U.C.A.1953, as amended 1957, 1969. Section 78–3–20 provides that the governor shall designate a member of the Supreme Court as an assignment justice. One of the duties of the assignment justice is to assign district judges to assist in any court which he finds to be in need of assistance. Section 78–3–21 provides:

The administrator for the district courts shall, under the supervision and direction of the Supreme Court assignment justice:

\* \* \* \* \* \*

(i) Establish uniform hours for court sessions throughout the state, and may with the consent of the assignment justice, and under such financial limitations as may be fixed by the board of examiners, and with the consent of retired justices of the Supreme Court, or retired judges of the district or city court, or an active city judge, call said judge to serve temporarily as a district judge and fix reasonable compensation for such services;

█ Judge Mecham was selected to act as a district judge in a manner provided by law; he was not acting as a judge pro tempore as that term is used in the Constitution and statutory enactments. Any member of the bar may act as a judge pro tempore, who acts by the consent of the parties, his powers may be restricted to

the issues designated by the parties, and his compensation may not come from the public treasury. In contrast, under Section 78–31–21, active or retired members of the judiciary may be assigned to serve temporarily as a district judge at public expense without the consent of the parties, and the parties are without power to limit the issues he may try.

■ In regard to defendant's allegations of bias and prejudice, a hearing was held before Judge Cowley, who denied the motion. Defendant argues that Judge Mecham, as committing magistrate, heard the evidence and formed an opinion as to the truthfulness thereof. This matter was tried before a jury, who acted as the fact finders; and, therefore, the opinion of the judge would be irrelevant. Defendant has not produced a scintilla of evidence to indicate any bias or prejudice on the part of Judge Mecham.

■ Defendant asserts that he was denied his right to counsel at the time of his identification by the complaining witness. Defendant cites United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); and Gilbert v. State of California, 388 U.S. 263, 87 S.Ct. 1951, 18 L. Ed.2d 1178 (1967).

A brief resume of the facts of this case will reveal that defendant was not denied counsel at a critical stage of the proceedings.

On May 22, 1969, defendant entered the Havana Club in Ogden, Utah, and inquired about the location of the restroom. The proprietor, Esquipula Trujillo, directed him. The defendant was attired in a rather distinctive white jacket and white shoes. After a few minutes, Mr. Trujillo went to the restroom and discovered defendant washing his shoe. The proprietor protested and defendant departed. Shortly thereafter, Mr. Trujillo emerged from the room and observed defendant throwing Mrs. Trujillo's purse inside the bar. Mr. Trujillo pursued him out of the bar and called his two sons in an adjacent establishment to join the chase. Mr. Trujillo went to summon the police. The Trujillo sons, except for a brief number of seconds, had defendant at all times within their sight. A passing motorist, Denise Scott, observed defendant's flight and called him to her car. Defendant jumped in the back seat and handed the motorist some papers. At that moment the police arrived and defendant told Miss Scott to throw the papers outside, which she did. The Trujillo boys arrived and a scuffle ensued; the police removed defendant and his pursuers to the police station. One of the police officers had observed Miss Scott discarding the papers, and he retrieved them. These papers were subsequently identified as the property Mrs. Trujillo had in her purse and included an envelope containing $66 in cash. Within 15 or 20 minutes after defendant

was apprehended, Mr. Trujillo arrived at the police station and identified defendant.

At the trial, defendant testified in his own behalf. He admitted that it was he in the Havana Club. He explained that he simply took two envelopes off the bar as he departed; he denied any knowledge of the purse he allegedly pilfered.

At the conclusion of the prosecution's case, defense counsel made a motion to dismiss on the ground that Mr. Trujillo made an identification in a lineup situation, and defendant was not advised of his right to counsel. The trial court determined that the Wade case was distinguishable and not controlling in the instant cause. The court reasoned that the continuity of the happenings here with contact being made from person to person from the time of the alleged offense established a sufficient basis for the identification so that the matter would not hinge on the identification by Mr. Trujillo at the station.

[7] Since the Wade-Gilbert rules are of comparatively recent origin, it would be wise to review the procedure.

* * * The proper way to raise a Wade objection is by a motion to suppress identification testimony before trial. That procedure allows a suppression hearing and a decision on the disputed evidence before a jury is empaneled, and promotes an orderly and uninterrupted trial. A distinctly second-best procedure is a defense motion to suppress during trial. That procedure at least allows decision of the constitutional issue before fatally prejudicial testimony comes before the jury. * * *[2]

In the interest of orderly procedure defense counsel should be admonished to seek an evidentiary hearing to determine the admissibility of identification testimony prior to trial. In the instant action, defense counsel made no objection to the allegedly inadmissible testimony until the prosecution had rested; he should have at least made a motion to strike the testimony of any witness in violation of the Wade-Gilbert rules at the conclusion of the witness' testimony.

In order to resolve the issues in the instant case, it would be beneficial to review briefly the rulings of the *Wade* and *Gilbert* decisions. In these cases, the court held that a court room identification, in fact the fruit of a suspect pretrial identification, was inadmissible, unless the prosecution can establish by clear and convincing evidence that the in-court identification was based upon observations of the suspect other than the lineup identification. On the other hand, where the admissibility of evidence of the lineup identification itself was involved, the court applied a per se exclusionary rule in order to assure that law enforcement authorities will respect the ac-

2. Solomon v. United States, (1969) 133 U.S.App.D.C. 103, 408 F.2d 1306, 1309.

cused's right to the presence of counsel at the critical lineup, and the State was denied the opportunity to show that the testimony had an independent source. The court reasoned that a witness' testimony of his line-up identification will enhance the impact of his in-court identification on the jury and seriously aggravated the accused's right to a fair trial; and, therefore, unless the court can declare that such testimony was harmless beyond a reasonable doubt, the accused was entitled to a new trial.

In the instant action, witness, Trujillo, testified as to his identification of defendant at the police station in a face-to-face confrontation; defendant was not represented by counsel nor had he waived such right. Therefore, the per se exclusionary rule of *Wade-Gilbert* would be applicable to this testimony, unless the facts of this cause fall within an exception to the rule. Identification of defendant, however, was not a fact in issue. Defendant conceded that he was in the bar; he merely denied that he had stolen money. Therefore, the testimony of witness, Trujillo, concerning his identification of defendant at the police station may be declared harmless beyond a reasonable doubt.

There is one other aspect which merits consideration, for the courts have recognized an exception to the *Wade-Gilbert* rules. In the Wade decision the court expressed the following rationale for its ruling.

> * * * we scrutinize *any* pretrial confrontation of the accused to determine whether the presence of his counsel is necessary to preserve the defendant's right to a fair trial as affected by his right meaningfully to cross-examine the witness against him and to have effective assistance of counsel at the trial itself. It calls upon us to analyze whether potential substantial prejudice to defendant's rights inheres in the particular confrontation and the ability of counsel to help avoid that prejudice.[3]

Based on the foregoing statement, the courts have declined to apply the *Wade-Gilbert* rules in certain nonlineup contexts wherein confrontations have occurred shortly after the commission of the crime or in other circumstances where prompt identification is necessary or desirable. The California Supreme Court observed that the proper determination of whether the Gilbert-Wade rules were applicable to a particular case will be achieved only by a careful balancing of the need for a prompt lineup identification in light of the circumstances against the need for and ability of counsel to avoid erroneous identification. The court stated that each case will of necessity call upon the courts to analyze whether potential substantial prejudice to defendant's rights inheres in the particular

---

3. At page 227 of 388 U.S., at page 1932 of 87 S.Ct.

confrontation and the ability of counsel to help avoid that prejudice.[4]

In the instant action, we hold that the rules of *Wade-Gilbert* are inapplicable to this particular nonlineup confrontation, which occurred as a result of an immediate pursuit and apprehension and within minutes after the commission of the crime.

■ Finally, defendant asserts that the trial court committed prejudicial error by the manner in which it framed the instruction regarding the elements of grand larceny. The court instructed the jury that before defendant could be convicted they must be convinced beyond a reasonable doubt that the money described in the evidence as having been stolen from Mrs. Trujillo was in fact taken by defendant. Defendant contends that this phase of the instruction was misleading and induced the jury to draw an erroneous inference, i.e., the instruction prejudged the fact that the money was stolen from Mrs. Trujillo. The defense was that defendant had taken some envelopes but no money, and defendant claims the instruction eliminated this defense. This argument is without merit; this court will not take a portion of one instruction out of context and distort its meaning. The instruction does incorporate defendant's theory of the case.

The judgment of the trial court is affirmed.

CROCKETT, C. J., and TUCKETT and ELLETT, JJ., concur.

HENRIOD, Justice (dissenting).

I respectfully dissent. I think the trial court was disqualified, and that McGee's second point on appeal, that:

The trial judge should have disqualified himself on the basis of having been the presiding magistrate at the preliminary hearing and that appellant did not agree as to his sitting as pro tempore judge,

is well taken, since Article VIII, Section 5, of the Utah Constitution, specifically and unequivocally says that:

Any cause in the district court may be tried by a judge pro tempore * * * agreed upon by the parties, or their attorneys of record.

Concededly this never was done in the instant case.

The judge here also was the city judge that held the preliminary hearing in this case. It was he who bound the defendant over to the District Court for *trial*. That trial is the same trial at which this self-same city court judge presided as a District Court judge, although neither the defend-

4. See footnote 16 in People v. Fowler, 1 Cal.3d 335, 82 Cal.Rptr. 363, 461 P.2d 643, 650 (1969) ; also see Russell v. United States, (1969) 133 U.S.App.D.C. 77, 408 F.2d 1280; State v. Madden (Or.), 461 P.2d 834 (1969)

ant nor his attorney consented to such unorthodox procedure, and although they had objected to his Honor (or Honors) on the basis of bias and prejudice. After this city judge bound defendant over to the District Court for trial (which was later presided over by the same erstwhile city judge), appellant fired his appointed counsel because he believed there was a conflict of interest. Present counsel, Mr. Florence, was then appointed to represent defendant. Stating that previous counsel's notes were illegible and that he could not properly defend McGee, he asked the judge of the District Court to order another preliminary hearing. Whether he was entitled to another such hearing is somewhat debatable, but immaterial, since the fact is that the District Court judge *ordered* another preliminary hearing. The same city judge flouted such order and refused to comply with it. Counsel for defendant pressed the matter of bias and prejudice before the District Court. His objection detoured and came before *another* District Judge, who, with a sweep of an albino brush, countermanded the order of his robed colleague. In any league, it would seem to this writer, the city judge voluntarily should have disqualified himself from umpiring in any future innings of the present juridical ball game.

Under such circumstances one at least may wonder about constitutional guarantees of due process in proceeding afresh before the same judge. Guilty or not guilty, an accused, under such circumstances, might feel legally denuded or disrobed before the same re-robed jurist, sitting not behind the same, but a different bench, beyond his former bailiwick.

The main opinion justifies all this and completely ignores Point No. 2 mentioned above, by gratuitously raising a brand new point that neither side considered pertinent, —an issue based on a statute never mentioned anywhere by anyone, in the briefs on appeal, or in the record (Title 78-3-20, 21 U.C.A.1953, as amended Chapter 253, Laws of Utah 1969).

The only statutory issue in this case relating to the qualification of the trial court had to do with Article VIII, Section 5, of the Utah Constitution. Appellant said this constitutional provision was violated since defendant obviously did not consent to the city judge sitting in judgment over defendant as District Court judge. As to such lack of consent, defendant is dead right, and the State does not deny that he is dead right,—neither in the record nor in its brief. The whole thrust of the State's answer to McGee's contention is that the city court judge actually was a qualified *judge pro tempore,* because McGee "acquiesced in Judge Mecham's sitting *as* pro tempore judge." The State pulls that one out of the fire by the novel argument that after defendant screamed that Judge Mecham was biased and prejudiced, and was given

the paint treatment mentioned above, he did no more objecting,—and bingo, thus acquiesced. Nowhere can the main opinion point to any contention by the State or anyone else, except that urged by the unsolicited, unwarranted and unsanctioned issue raised for the first time on appeal by this court itself.

The defendant has had absolutely no opportunity intelligently to meet this new point raised by this court, except in the middle of counsel's oral argument to the court, when one of the justices inquired as to its applicability here.

What this court unfortunately is doing in this case is issuing a declaratory judgment, not initiated properly under the provisions of our declaratory judgment act, not a true adversary proceeding, without any opportunity on the part of anyone to research and brief the matter,—in effect, declaring that the appointment of a city judge to be a district judge under 78-3-20, U.C.A.1953, is compatible with the constitutional sanctions pertaining to judges pro tempore. Mr. Florence, counsel for defendant, was a member of the legislature that passed the act. In open court he emphatically announced that the legislature had no intention of concluding as does the main opinion here.

I think there are many besides this writer who would question the constitutionality of that statute, what with the possibility that incursions into the area of constitutionally created courts well might be extended by future legislatures to include those presiding over ecclesiastic courts, town court judges, judges of election or beauty contests, as being qualified to sit in judgment over accused persons, million dollar trusts, wills and succession matters and the like.

One might say that surely the legislature would not expand such legislation. It is interesting to note that the original legislation, Chapter 222, Laws of Utah 1967, allowing assignment only of *district judges,* quickly was amended by Chapter 253, Laws of Utah 1969, to include *city judges.* At this pace, the complete breakdown of a substantial, responsible judicial system easily can be seen legislatively written on the red sails in the sunset.

The appellant should have a new trial 1) because the procedure in this case lacked the essentials of due process, and 2) the trial court was not invested with any authority as a judge pro tempore under the constitution and/or its implementing judge pro tempore statute (78-3-15, 16, U.C.A.1953).