Joyce K. CAHOON, Plaintiff and Appellant,

v.

Roger L. CAHOON, Defendant and Respondent.

No. 17414.

Supreme Court of Utah.

Jan. 26, 1982.

Walter R. Ellett, Murray, for plaintiff and appellant.

Loni F. DeLand and Robert McRae of McRae & DeLand, Salt Lake City, for defendant and respondent.

OAKS, Justice:

Appellant attacks two orders of the district court requiring the sale of real property in accordance with a stipulated property settlement incorporated in a divorce decree. The issues are (1) whether the orders are final and appealable; (2) whether the court had authority to issue them; and (3) whether the court erred in ordering or authorizing the execution of the closing documents.

1. At the threshold, respondent urges dismissal of this appeal, contending that the orders enforcing the divorce decree

were not appealable as a matter of right. The final judgment rule does not preclude review of postjudgment orders. Such orders are independently subject to the test of finality, according to their own substance and effect. *Van Wagenen v. Walker*, Utah, 597 P.2d 1327 (1979); *United States v. Church of Jesus Christ of Latter-day Saints*, 5 Utah 394, 395, 16 P. 723, 723–24 (1888). Thus, in *Van Wagenen v. Walker, supra*, we held that orders vacating garnishment judgments were not final and appealable within the meaning of Utah R.Civ.P. 72(a), because their effect was to restore the previous status of the parties and leave their controversy open for future determination. In contrast, the effect of the order requiring appellant to convey the disputed property in this case was to determine substantial rights in the disputed property and to terminate finally the litigation surrounding its sale. As such, both orders were final within the meaning of Rule 72(a). The appeal was properly taken and will not be dismissed.

2. Appellant contends that the circuit judge who signed the two orders "acted without authority and without proper appointment," because he was acting as a judge pro tem without the agreement of the parties. Utah Constitution, Article VIII, § 5; U.C.A., 1953; §§ 78–3–15 to –17. This argument confuses two separate sources of judicial authority: (1) a judge pro tempore, who may be any member of the Bar appointed and compensated by agreement of the parties to rule upon specific issues designated by them, pursuant to the authorities cited above, and (2) a circuit judge appointed by the state court administrator to serve temporarily as a district judge in accordance with the laws cited below.

In *State v. McGee*, 24 Utah 2d 396, 473 P.2d 388 (1970), we responded to a similar objection by holding that a city judge "temporarily *assigned* as a district judge . . . was not acting as a judge pro tempore." *Id.* at 398, 473 P.2d at 389. The assignment whose validity was sustained in that case was pursuant to a provision in the first Court Administrator's Act, 1969 Utah Laws,

ch. 253, codified in U.C.A., 1953, § 78–3–21(i) (since repealed), which is the direct predecessor of the assignment provision in the current Court Administrator's Act of 1973, U.C.A., 1953, § 78–3–24(j). So far as pertinent here, the current statute authorizes the state court administrator, with the consent of the chief judge and the judge to be assigned, to call "an active . . . circuit court judge . . . to serve temporarily as a district . . . judge . . . ." On this same subject, the Circuit Court Act of 1977, codified in U.C.A., 1953, § 78–4–15, provides:

> Any judge of the circuit court may, at the request of any judge of the district court and with the approval of the state court administrator, sit as a district judge and in those instances shall have the same powers as a district judge.

It appears from this language that the recent legislation strengthens the statutory authority for assignment of judges in the district court and applies that principle to circuit judges. We therefore reaffirm the holding in *State v. McGee, supra*, that a judge assigned pursuant to law is not a judge pro tempore and is not subject to the legal restrictions pertaining to that status. Neither party having raised any question on the constitutionality of the assignment legislation, that issue is not before us on this appeal and we express no opinion on it.

We must also decide whether the circuit judge was assigned to this case pursuant to law. The record shows that the divorce decree and the order to show cause dated September 26, 1980, were both signed by district judges. Thereafter, the record contains an executed but undated form "Notice of Judicial Appointment" stating that upon the request of a named district judge and with the approval of the state court administrator pursuant to U.C.A., 1953, § 78–3–21, *et seq.*, and § 78–4–15, "Judge Jones has been authorized and appointed to act as District Judge in the case of *Cahoon v. Cahoon*, Case No. D 80–23, on the 21 day of October 1980." The record contains another notice identical to the above, except for the date, "5th day of

November 1980." The contested orders in this case were signed by Judge Maurice D. Jones in the district court on October 21st and November 3d.

Section 78–4–15 states that a circuit judge who is requested and approved to sit as a district judge *"in those instances* shall have the same powers as a district judge." The emphasized words refer to the individual *case* for which the circuit judge has been requested and approved, not to a particular judicial *act* to be performed on a particular date. Consequently, the October 21st date in the Notice of Judicial Appointment is not a limitation of the assigned judge's authority, and the November 5th Notice was superfluous. The authority to act in the designated case continues until revoked by the state court administrator or by appropriate administrative authority in the district court.

Since we conclude that the circuit judge in this case was regularly assigned and sitting as a district judge pursuant to law, his authority was in no way contingent on the parties' consent. Appellant's challenge to his authority is therefore without merit.

3. Finally, appellant argues that the court erred in ordering or authorizing the execution of deeds giving effect to the decree of divorce. In accordance with the parties' stipulated property settlement, the decree expressly ordered that the parties' condominium should be placed for sale by the respondent, and "if the same is sold . . . on or before August 15, 1980, for the sum of $175,000, or more," the net proceeds of the sale (after payment of the mortgage and other agreed amounts) were to be divided between the parties. Further, "[i]n the event that the condominium is not sold as herein provided, then and in that event said condominium shall be awarded to the [appellant] as her sole and absolute property, subject to the mortgage indebtedness . . . ."

Pursuant to this order, prospective purchasers were obtained, and after the failure of two preliminary offers a third and final earnest money receipt and offer to purchase agreement was obtained from the purchasers and executed by appellant and respondent on August 15, 1980. This agreement stated a purchase price of $175,000, subject to buyers' obtaining financing, and set a closing date of September 1, 1980. The purchasers were able to obtain financing on the terms stated in the earnest money agreement, and the record indicates that they were ready, willing, and able to purchase the property.

Respondent and the purchasers met for the closing on September 16, 1980, the revised date they had specified, but appellant did not attend and refused to sign the documents necessary to close. She contended that the sale met neither the August 15th deadline stated in the divorce decree nor the September 1st date fixed in the earnest money agreement, and that, by the terms of the divorce decree, she had therefore become the sole owner of the property. After a hearing on an order to show cause, on October 21, 1980, the court ordered appellant to execute the documents necessary to complete the sale. When she failed to do so, on November 3, 1980, the court granted respondent's counsel authority to execute the closing documents, and the property was conveyed.

Appellant argues that the agreement executed on August 15th was not a "sale" as required by the divorce decree, but only an option to purchase. In contrast to an option, which is a unilateral obligation binding only on the optionor, *Catmull v. Johnson*, Utah, 541 P.2d 793, 796 (1975); *Bradshaw v. Kershaw*, Utah, 529 P.2d 803, 805 (1974); *Loose v. Brubacher*, 219 Kan. 727, 731, 549 P.2d 991, 996 (1976), an executed earnest money receipt and offer to purchase agreement is a contract binding on both parties. In this case, the buyers satisfied the condition of financing and were able to purchase the property, and the sellers had the right to hold them to their promise to do so. The agreement of sale, executed on the performance date required in the divorce decree, therefore satisfies the condition of "sale" of the property within the meaning of the divorce decree.

Appellant argues that she was not bound to perform because the closing was not held on the September 1, 1980, date fixed in the earnest money agreement. The general rule with regard to contracts for the sale of land is that time is not of the essence unless the parties expressly indicate otherwise or the circumstances surrounding the transaction necessarily imply that the parties intended timeliness of performance to be of paramount concern. *Hing Bo Gum v. Nakamura*, 57 Hawaii 39, 549 P.2d 471 (1976); *Ficke v. Alaska Airlines, Inc.*, Alaska, 524 P.2d 271, 277–78 & n. 4 (1974); *Russell v. Ferrell*, 181 Kan. 259, 311 P.2d 347 (1957); *Dillard v. Ceaser*, 206 Okla. 304, 243 P.2d 356 (1952); *Loyd v. Southwest Underwriters*, 50 N.M. 66, 169 P.2d 238 (1946). In this case, the record contains no evidence that the parties intended time to be of the essence in the performance of the earnest money agreement. The terms of the agreement do not so state, such as by requiring a forfeiture of the deposit or an avoidance of the contract if the deadline were not met. Appellant makes no showing that she would have suffered irreparable harm if the property were not closed on the stated date. Indeed, her own delaying actions indicate otherwise.

Parties to a contract are obliged to proceed in good faith and to cooperate in the performance of the contract in accordance with its expressed intent. One party cannot by willful act or omission make it impossible or difficult for the other to perform and then invoke the other's nonperformance as a defense. *Ferris v. Jennings*, Utah, 595 P.2d 857, 859 (1979); *Zion's Properties, Inc. v. Holt*, Utah, 538 P.2d 1319, 1321 (1975). The court did not err in requiring appellant to execute the documents necessary to close the sale or in later authorizing another to do so.

The orders appealed from are affirmed. Costs to respondent.

HALL, C. J., STEWART and HOWE, and RONALD O. HYDE, District Judge, concur.