STATE of Utah, Plaintiff and Appellee,

v.

Barry J. SNYDER, Defendant
and Appellant.

No. 920475–CA.

Court of Appeals of Utah.

Aug. 27, 1993.

Jan P. Malmberg (argued), Perry, Malmberg & Perry, Logan, for defendant and appellant.

Jeffrey "R" Burbank (argued), Deputy Casche County Atty., Logan, for plaintiff and appellee.

Before BILLINGS, GARFF and ORME, JJ.

## OPINION

ORME, Judge:

Defendant Barry Snyder appeals his jury conviction for two counts of lewdness involving a child, Class A misdemeanors, in violation of Utah Code Ann. § 76-9-702.5 (1991). On appeal, defendant raises several issues, the most important being the claim that he was denied the effective assistance of counsel, in violation of the Sixth Amendment, by reason of trial counsel's failure to timely interpose a *Miranda* objection. We reverse and remand.

## FACTS

On March 17, 1992, at approximately 3:00 p.m., two young girls claimed a man ex-

posed himself to them in front of a residence, which proved to be that of defendant. At the time, defendant was a Category I police officer, employed at the Cache County Sheriff's Office as a correctional officer. Pursuant to the investigation of the allegedly lewd display, two police officers, Detective Sergeant Lynn Nelson and Lieutenant Robert DeGasser, arrived at defendant's home at approximately 8:45 a.m. the following morning. The officers asked defendant to accompany them to the Child and Family Support Center in Logan. Defendant agreed to do so.

Upon arrival at the Center, Nelson, who was familiar with defendant's police background, had the following discussion with defendant concerning his *Miranda* rights:

Q: Um, typically in these situations I have to read people their rights. I think you know what your rights are, probably.

A: Oh, yeah.

Q: And understand them.

A: Yeah.

After this exchange, the officers questioned defendant without any further reference to his *Miranda* rights. The officers videotaped the entire interview with defendant. Although it is unclear from the record exactly how long the questioning lasted, it can be deduced from Nelson's trial testimony that the interview continued for well over an hour.[1] During this interview, defendant admitted to being present when the incident in question occurred, but he denied any lewd behavior. In contrast to the two girls who claimed he was nude, defendant claimed he was wearing a pair of shorts when he opened his front door to tell the children to get away from his property. More importantly, defendant made numerous statements regarding his sexual proclivities. Following this interview, the officers returned defendant to his home and, pursuant to a consent search, procured the clothing defendant claimed to be wearing at the time of the incident.

Defendant and his trial counsel reviewed the videotaped interview on April 6, 1992. A verbatim transcript of the videotape was prepared and a copy was provided to defense counsel in early May. On May 15, 1992, less than five days before trial, defense counsel filed a motion to suppress all statements made in the interview. A hearing on the motion to suppress was held on May 19, 1992. The trial court denied defendant's motion because it was not timely made and hence was in violation of Rule 12(b)(2) of the Utah Rules of Criminal Procedure, which requires requests for ruling on the admissibility of evidence to be made at least five days prior to trial.[2]

Defendant was tried by a jury on May 21, 1992. Statements that defendant made during the interview were used against him at trial, both as substantive evidence and for impeachment purposes. Post-interview statements that defendant made to police officer Marty Prescott concerning his sexual problems and fantasies were also presented to the jury when she testified as to their conversation. After hearing all the conflicting testimony, the jury found defendant guilty of two counts of lewdness involving a child.

Defendant claims that because his trial counsel failed to timely file the motion to suppress, the jury was inundated with highly prejudicial testimony that undoubtedly swayed their verdict. Defendant contends that trial counsel's failure to timely file this motion, which was crucial to his

---

**1.** Nelson testified that the interview was divided into three segments. Nelson initially questioned the defendant alone, then Degasser interviewed the defendant while Nelson observed from an adjoining room, and finally they both interrogated defendant together. Nelson stated that she questioned the defendant alone for approximately fifty minutes.

**2.** The transcript of the hearing on the motion to suppress is somewhat ambiguous as to why the defendant's motion was denied. The trial court explicitly stated that the motion was not timely and no extenuating circumstances existed for the failure to timely file. However, the court, without elaboration, also noted its view that the initial conversation between Nelson and defendant satisfied the requirement of *Miranda* that certain rights be explained to suspects prior to any custodial interrogation. The court did not touch upon whether the "interview" with defendant constituted custodial interrogation.

defense, constituted ineffective assistance of counsel.

## STANDARD OF REVIEW

In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court set forth a two-prong analytical framework for evaluating ineffective assistance of counsel claims brought under the Sixth Amendment to the United States Constitution. In order for a defendant's Sixth Amendment challenge to succeed, the defendant

must show that counsel's performance was deficient. This requires showing, that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. *Accord State v. Templin*, 805 P.2d 182, 186 (Utah 1990). Defendant not only has the burden of meeting both prongs of this test, but must also overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. *Accord Templin*, 805 P.2d at 186; *State v. Tennyson*, 850 P.2d 461, 465–66 (Utah App.1993). Moreover, "this court will not second-guess trial counsel's legitimate strategic choices, however flawed those choices might appear in retrospect." *Tennyson*, 850 P.2d at 465. *See Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065; *State v. Pascual*, 804 P.2d 553, 556 (Utah App.1991). Given the arduous nature of the defendant's burden, ineffective assistance of counsel claims rarely succeed. *See Tennyson*, 850 P.2d at 466; *State v. Moritzsky*, 771 P.2d 688, 690 (Utah App.1989).

Nevertheless, the right to effective counsel is a crucial element of a criminal defendant's Sixth Amendment rights. Thus, in determining whether a defendant was denied effective assistance of counsel, this court cannot apply rigid mechanical rules, but instead must focus "on the fundamental fairness of the proceeding whose result is being challenged." *Strickland*, 466 U.S. at 670, 104 S.Ct. at 2056.

When a trial court has previously ruled on an ineffective assistance of counsel claim, the issues raised present mixed questions of law and fact. *Strickland*, 466 U.S. at 698, 104 S.Ct. at 2070. However, in a situation such as the present case, where the ineffective assistance claim is first raised on direct appeal, this court can only determine that the defendant was denied effective assistance of counsel if it can do so as a matter of law.[3] *See State v. Tennyson*, 850 P.2d at 466; *State v. Ellifritz*, 835 P.2d 170, 175 (Utah App.1992). Because of the "distorting effects of hindsight," *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065, appellate review of trial counsel's performance must be highly deferential in order to prevent the temptation to second-guess counsel's actions based on a lifeless record. *See Tennyson*, 850 P.2d at 466.

## *MIRANDA* REQUIREMENT

Defendant's primary contention is that trial counsel's performance, in failing to timely bring and preserve a suppression motion premised on a violation of *Miranda*, fell below the standard guaranteed by the Sixth Amendment. Accordingly, we must first decide whether defendant's *Miranda* rights were actually violated. If they were not, trial counsel's tardiness in bringing the suppression motion was not prejudicial and the ineffective assistance claim fails.

In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court stated that "the

---

**3.** If counsel's performance is clearly deficient, but prejudice cannot be determined on the record before us, remand is appropriate. *See, e.g., State v. Cummins*, 839 P.2d 848, 858–59 (Utah App.1992), *cert. denied*, 853 P.2d 897 (Utah 1993). Remand is also available under certain circumstances pursuant to Rule 23(b) of the Utah Rules of Appellate Procedure.

prosecution may not use statements ... stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Id.* at 444, 86 S.Ct. at 1612. More importantly, the Court stated that *"whatever the background of the person interrogated,* a warning at the time of the interrogation is indispensable...." *Id.* at 469, 86 S.Ct. at 1625 (emphasis added). Thus, a "warning is an absolute prerequisite to interrogation. *No amount of circumstantial evidence that the person may have been aware of this right will suffice to stand in its stead."* *Id.* at 471–72, 86 S.Ct. at 1626 (emphasis added).

Defendant contends that the police interview at the Center was a custodial interrogation and because the questioning was not preceded by the requisite *Miranda* warnings, the State's use of any statements made during or as a result of this interview violated his rights as defined in *Miranda.*

We must address two related questions in deciding this claim. First, we must determine whether the police interview, in which defendant made his statements, constituted "custodial interrogation." Second, if there was custodial interrogation, we must decide whether defendant's position as a police officer obviated the necessity of giving him the requisite *Miranda* warnings.

### A. Custodial Interrogation

The United States Supreme Court has defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). The Court elaborated on this definition in *Oregon v. Mathiason,* 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977) (per cu-

riam), stating that *"Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.'" *Id.* at 495, 97 S.Ct. at 714. Analyzing the applicable case law, this court has held that "the proper inquiry as to whether a defendant is in custody for the purposes of *Miranda* is whether a reasonable person in defendant's position would believe his 'freedom of action is curtailed to a degree associated with a formal arrest.'" *State v. Mirquet,* 844 P.2d 995, 998 (Utah App.1992) (quoting *State v. East,* 743 P.2d 1211, 1212 (Utah 1987)). *See Berkemer v. McCarty,* 468 U.S. 420, 440, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317 (1984); *Salt Lake City v. Carner,* 664 P.2d 1168, 1171 (Utah 1983); *State v. Mincy,* 838 P.2d 648, 652 (Utah App.), *cert. denied,* 843 P.2d 1042 (Utah 1992); *State v. Sampson,* 808 P.2d 1100, 1104 (Utah App.1990), *cert. denied,* 817 P.2d 327 (1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1282, 117 L.Ed.2d 507 (1992). Thus, "the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." *Berkemer,* 468 U.S. at 442, 104 S.Ct. at 3151; *Mincy,* 838 P.2d at 652; *Sampson,* 808 P.2d at 1104.

■ The Utah Supreme Court and this court have identified five key factors to weigh in determining whether a defendant "who has not been formally arrested is in custody." *Salt Lake City v. Carner,* 664 P.2d 1168, 1171 (Utah 1983). The factors are " '(1) the site of interrogation; (2) whether the investigation focused on the accused; (3) whether the objective indicia of arrest were present; ... (4) the length and form of interrogation'....[; and] (5) whether the defendant came to the place of interrogation freely and willingly." *Sampson,* 808 P.2d at 1105 (quoting *Carner,* 664 P.2d at 1171). We now analyze the undisputed facts of the instant case using these five factors in conjunction with the objective standard announced in *Berkemer.*[4]

---

4. As indicated in note 2, the trial court did not undertake an analysis of these factors. Nor is the videotape or the transcript of the interview between defendant and the police included in our record. However, given the extensive trial testimony during which large portions of the interview were read, and the essentially undisputed character of the ancillary facts, we are confident that we can accurately analyze the

We will only briefly touch upon factors (3) and (5) because they are relatively neutral. Considering factor (3), it is clear that defendant was not physically restrained nor was he told he was under arrest. However, at no time was defendant informed that he was free to leave. The police brought him to the Child and Family Support Center, told him that this was normally a situation where a person would be read his *Miranda* rights,[5] and trained a video-camera on him. Concerning factor (5), defendant went voluntarily to the Center when requested to do so by the officers at his front door. However, once he arrived at the Center and admitted he was the man the children saw, a reasonable person in defendant's place would likely believe his or her freedom had become significantly curtailed.

The three remaining factors—(1) the site of the interrogation, (2) the focus of the investigation, and (4) the length and form of the interrogation—compel the conclusion that defendant was subjected to custodial interrogation. Taking these factors together, along with the aforementioned circumstances, we are confident that at the time defendant made his statements, a reasonable person in his position would have believed that his or her freedom was restricted to the same extent as if under arrest.

▆▆▆▆ Turning to factor (1), it is somewhat unclear from the record why the defendant was brought to the Center instead of the police station.[6] However, it appears that the Division of Family Services is lo-

cated in the building and that child victims are routinely interviewed in this facility. Several aspects of this particular location point toward a conclusion of custody. First, the Center is located in an isolated area. Additionally, given the apparent reasons for conducting the interrogation at the Center, *see* note 6; the fact that the Center is apparently a governmental facility; and the fact that the site was unilaterally chosen by the officers who drove defendant to it in their squad car, we conclude that in this instance the Center served as the functional equivalent of a police station, not as a neutral meeting place as the State contends.[7]

Regarding factor (2), we conclude that the investigation focused exclusively on the defendant, virtually from the outset of the questioning. Admittedly, when the police first brought the defendant to the Center, they had two possible suspects: the defendant and his roommate, a fellow officer. However, defendant immediately informed the police that he was the only one home at the time of the incident. Moreover, defendant freely admitted his involvement in the incident while denying any criminal conduct. The questions asked during the videotaped session clearly indicate that the officers believed defendant was the man the children saw at the door. There is no indication that any other suspect was sought or questioned. Indeed, once the defendant had admitted to being involved in the incident there was no need for further investigation concerning suspects—the girls saw one man and defendant readily

---

key circumstances without the necessity of remand.

5. While not dispositive, it is nonetheless telling that experienced police officers recognized the situation as one where *Miranda* warnings were, at least aside from defendant's position as a police officer, in order. *Cf. Sampson,* 808 P.2d at 1101, 1105 (police officer read suspect his rights after stating "[b]ecause you are in the cop shop ... and, uh, because you are in taking a polygraph from a law enforcement agency I must advise you of your rights").

6. Exchange at oral argument suggests it is likely that the Center was chosen as the interview site

both because video equipment was available at that location and out of the desire to avoid further humiliation to the defendant, a fellow law enforcement officer, that would result if he was questioned in one of the regular interrogation rooms at the police station.

7. Although questioning that occurs at a police station lends itself to a determination of custody, this factor alone is not dispositive. *Sampson,* 808 P.2d at 1105. Thus, even if we eschew the notion that the Center is more like a police station than a truly neutral situs, a determination of custody is not precluded if the other factors are sufficiently compelling.

admitted he was the man they saw.[8] It is clear from these facts that defendant was at all material times the exclusive focus of the investigation.

Lastly, factor (4) cements our belief that defendant was subjected to custodial interrogation. Utah courts have placed great emphasis on the length and form of the questioning used during an interview. *See, e.g., Mincy,* 838 P.2d at 653; *Sampson,* 808 P.2d at 1105.

 Courts have not found custodial interrogation where the questioning was merely investigatory. *Mincy,* 838 P.2d at 653. However, when the tone of the questions turns from investigatory to accusatory, custody is likely. *Sampson,* 808 P.2d at 1105. *See also State v. Kelly,* 718 P.2d 385, 391 (Utah 1986) (holding that the initial questioning was merely investigatory and *Miranda* warnings were not necessary until after police found incriminating evidence). "The change from investigatory to accusatory questioning occurs when the 'police have reasonable grounds to believe that a crime has been committed and also reasonable grounds to believe that the defendant committed it.'" *Sampson,* 808 P.2d at 1105–06 (quoting *Carner,* 664 P.2d at 1171). Even assuming that the initial questioning in this case was merely investigatory, the questioning became inarguably accusatory when defendant admitted that he was the man involved in the incident and that he had been masturbating immediately prior to the allegedly lewd display.

Turning from the form of interrogative to the length of interrogation, it is evident that the questioning lasted for well over an hour. Nelson testified at trial that initially she alone questioned defendant, then Degasser interviewed defendant while Nelson observed through an adjoining room, and finally both officers questioned defendant together. Nelson stated that the time period during which she questioned the defendant alone was approximately fifty minutes. Indeed, defendant claims that the interview lasted several hours. Under ei-

ther view, we believe the session continued for a lengthy enough period of time to suggest custody. *Cf. Mincy* 838 P.2d at 653 (refusing to find custody where the questioning lasted only five minutes and was investigatory rather than accusatory in nature).

In light of the undisputed evidence of the instant case bearing on the five factor analysis, we hold that defendant was subjected to custodial interrogation as of the time the interview started (or very shortly thereafter) and was, unless his occupation warrants a different result, therefore entitled to proper *Miranda* warnings.

### B. Status as a Police Officer

The State contends that defendant's occupation as a police officer excuses any noncompliance with the requirement of *Miranda* in this case.

In *Miranda,* the United States Supreme Court noted that

[t]he Fifth Amendment privilege is so fundamental to our system of constitutional rule ... we will not pause to inquire in individual cases whether the defendant was aware of his rights without a warning being given. Assessments of the knowledge the defendant possessed, based on information as to his age, education, intelligence, or prior contact with authorities, can never be more than speculation; a warning is a clearcut fact. More important, *whatever the background of the person interrogated,* a warning at the time of the interrogation is indispensable to overcome its pressures and to insure that the individual knows he is free to exercise the privilege at that point in time.

*Miranda v. Arizona,* 384 U.S. 436, 468–69, 86 S.Ct. 1602, 1625, 16 L.Ed.2d 694 (1966) (emphasis added) (footnote omitted). We detect no indication in this language that the Court intended to distinguish between individuals based on occupation or training in determining when *Miranda* warnings

---

**8.** The girls and defendant primarily differed on whether defendant was clothed and what he was doing with his hands. *See also* note 13.

are required. Indeed, subsequent cases have so held. *See, e.g., Desire v. Attorney General of California,* 969 F.2d 802, 805 (9th Cir.1992) (holding that although defendant was a deputy sheriff, *Miranda* warnings were required, irrespective of defendant's knowledge of his Fifth Amendment rights); *United States v. Longbehn,* 850 F.2d 450, 453 (8th Cir.1988) (holding that defendant's status as police officer did not obviate the requirement of *Miranda*); *United States v. Espinosa–Orlando,* 704 F.2d 507, 514 (11th Cir.1983) (holding that defendant's prior arrests were insufficient to establish that defendant was aware of his right to appointed counsel, even though he told DEA officers that he understood his rights); *United States v. Farinacci–Garcia,* 551 F.Supp. 465, 476 (D.P.R.1982) (holding that defendant's occupation as an attorney did not relieve police officers of giving him the requisite *Miranda* warnings).[9]

We believe that these decisions represent a well-reasoned approach that imposes a minimal, completely uniform duty on police while at the same time acting to ensure that every individual is guarantied their rights as required by *Miranda.* "The police are already well accustomed to giving *Miranda* warnings to persons taken into custody. Adherence to the principle

that *all* suspects must be given such warnings will not significantly hamper the efforts of the police to investigate crimes." *Berkemer v. McCarty,* 468 U.S. 420, 434, 104 S.Ct. 3138, 3147, 82 L.Ed.2d 317 (1984) (emphasis in original). Therefore, we reject the State's contention that defendant's assumed knowledge of his rights can be used as a basis for neglecting to give him the requisite *Miranda* warnings to which every other United States citizen is entitled. This court refuses to engage in the kind of arbitrary line drawing that would necessarily result if we were to accept the State's argument.[10]

## INEFFECTIVE ASSISTANCE OF COUNSEL

### A. Counsel's Performance

Defendant raises several bases to support his claim that trial counsel's performance constituted ineffective assistance. The key argument in support of defendant's ineffective assistance of counsel claim is based on his trial counsel's failure to timely file a motion to suppress all statements made in or as a result of the videotaped interview on the ground that the police failed to advise defendant of his rights as required under *Miranda.*[11]

---

**9.** *Cf. United States v. Hall,* 724 F.2d 1055, 1059 (2nd Cir.1983) (noting that "there is force in the [trial] judge's observation that Hall knew his rights all along since he was not 'a newcomer to the law,' *United States v. Watson,* 423 U.S. 411, 424–25, 96 S.Ct. 820, 828, 46 L.Ed.2d 598 (1976); and, more important, no newcomer to the jurisprudence of *Miranda*"). However, in *Hall* the defendant, a repeat offender, was at least read his rights and the only question was whether he understood them. *See also Los Angeles Police Protective League v. Gates,* 579 F.Supp 36, 42 (C.D.Cal.1984) (holding that although *Miranda* warnings were not given to defendant police officers, they had no cause of action under 42 U.S.C. § 1983 because they were never prosecuted).

**10.** The State makes two additional arguments which merit only cursory discussion. First, the State contends that the conversation between Nelson and the defendant constituted an effective recitation of the requisite *Miranda* warnings. Although it is well settled that *Miranda* warnings do not have to be recited verbatim, it stretches the imagination to conclude that merely asking a person if he knows and understands

his rights, without more, constitutes a sufficient explanation of *Miranda*. *See Duckworth v. Eagan,* 492 U.S. 195, 202, 109 S.Ct. 2875, 2879, 106 L.Ed.2d 166 (1988). The State's second contention is that the conversation between Nelson and the defendant constituted a waiver of the defendant's rights. We reject this argument. It is untenable that a person who has not been made fully aware of his rights, through a police recitation of *Miranda* warnings, could effectively waive them. *See United States v. Espinosa–Orlando,* 704 F.2d 507, 514 (11th Cir.1983) (where police failed to inform defendant of right to appointed counsel, he was presumed not to understand that right).

**11.** Additionally, defendant argues that trial counsel's performance was objectively deficient in that (1) counsel failed to request a cautionary jury instruction regarding eyewitness testimony; (2) counsel failed to move to dismiss one count of lewdness on the basis of the alleged victim's failure to identify the defendant; (3) counsel failed to seek to exclude testimony of witnesses not previously identified by the State; and (4) counsel failed to have a key defense witness

Initially, it is important to note that trial counsel reviewed the videotape of the police interview on April 6, 1992. At this point, counsel should have been aware of the highly unsettling and damaging statements that defendant had made during the interrogation. Furthermore, counsel knew that this interview had not been preceded by the requisite *Miranda* warnings. Nonetheless, counsel, without any compelling explanation for his delay, failed to file a motion to suppress until more than a month later and less than five days before trial, the deadline fixed by Rule 12(b)(2) of the Utah Rules of Criminal Procedure.

■ When judging counsel's performance, this court must determine whether "counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Although we have recognized that there is a strong presumption that counsel acted competently, where a defendant can show that there was no conceivable legitimate tactical basis for counsel's deficient actions, the first prong of *Strickland* is satisfied. *State v. Tennyson*, 850 P.2d 461, 468 (Utah App.1993).

■ Upon reviewing the record, we fail to see how trial counsel's failure to meet a crucial filing deadline can be explained as a sound trial tactic or strategy. *See State v. Cummins*, 839 P.2d 848, 858 (Utah App. 1992), *cert. denied*, 853 P.2d 897 (Utah 1993). A motion to suppress was necessary to insure that defendant's incriminating and embarrassing admissions were withheld from the jury. The record does not so much as suggest any explanation for counsel's failure to file the motion immedi-

ately after he viewed the videotape.[12] Given that there is no legitimate trial tactic to be served by failing to comply with the filing requirement of Rule 12(b)(2), defense counsel's actions fell "outside the wide range of professionally competent assistance." *State v. Frame*, 723 P.2d 401, 405 (Utah 1986). *See also Cummins*, 839 P.2d at 858 (failure to comply with notice requirement of Utah Code Ann. § 77–14–3 fell outside scope of professionally competent assistance); *State v. Moritzsky*, 771 P.2d 688, 692 (Utah App.1989) (no tactical explanation for failing to request more favorable defense of habitation instruction available under amended statute). Thus, in failing to timely file the motion to suppress, counsel's performance was objectively deficient.

### B. Prejudice

■ Finally, we must determine whether trial counsel's objectively deficient performance resulted in any prejudice to defendant. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Prejudice will be held to exist only where the error undermines our confidence in the verdict against the defendant. *See State v. Frame*, 723 P.2d 401, 405 (Utah 1986). Thus, we must decide if a reasonable probability exists that the jury's verdict would have been more favorable to defendant had the information from the interview been suppressed. *See State v. Moritzsky*, 771 P.2d 688, 692 (Utah App.1989).

■ At trial, the State focused on the statements defendant made during the police interrogation regarding his sexual proclivities. On cross-examination, the State repeatedly questioned defendant concerning his self-described "problem" with mas-

barred from the courtroom during testimony, in violation of the witness exclusion rule. Because we can resolve defendant's ineffective assistance claim solely on the basis of trial counsel's failure to timely file a motion to suppress under *Miranda*, it is unnecessary to address defendant's other contentions in support of his ineffective assistance claim.

12. During the hearing on the motion to suppress, trial counsel argued that he was unaware that defendant's videotaped admissions were going to be used at trial. Furthermore, trial coun-

sel contended that he was waiting for the interview to be transcribed before filing the motion. We agree with the trial court that neither of these arguments presents a compelling basis for missing the filing deadline. Additionally, there is some suggestion that trial counsel's original intent in not filing the motion to suppress earlier was a hope that at trial the evidence could be suppressed on the basis of relevancy. This argument is belied by the fact that no such relevancy motion was ever raised at trial.

turbation. The State read to the jury inflammatory statements made by the defendant during the interrogation, including the following:

> What I need to do is find something to curb that masturbation urge, that's the biggest problem, that's the problem.
>
> . . . .
>
> [My major concern is] [t]he fact that I have to use self-gratification to get any kind of sexual pleasure in life, to complete my urge for sexual pleasure.
>
> . . . .
>
> That if this situation [i.e., frequent masturbation] continued, that I really have no idea on where it could lead, that if I didn't get some sort of help to find me an alternative way to keep my urge from self-gratification and find a different way to, you know, meet my needs, as they say, that I didn't know where it was going to lead to.

Additionally, the State apparently attempted to imply that children sexually arouse the defendant by reading to the jury a conversation that occurred during the custodial interrogation, to the effect that right before the incident in question defendant had been arousing himself in the shower through sexual fantasizing and self-stimulation. Defendant continued:

> [T]hen I came—come out, and ... you know, here's a bunch of kids going by, you know, it clicks again, and I start thinking about these images that I've seen, you know, in movies and stuff; one

thing leads to another and I'm sitting on my couch when it ends.

It would be an unusual jury who, upon hearing these revelations, would not be moved to form substantially negative impressions of defendant. Without these and similar statements, it would merely have been a question of one man's word—the word of a police officer—against that of two young girls.[13] With the statements, defendant comes across as someone overwhelmed by sexual fantasy and autoeroticism. Since the statements made in the interview and recounted during trial testimony undoubtedly swayed the jury's perception of the defendant—and not for the better—it is difficult for us to imagine how counsel's failure to timely file a motion to suppress did not substantially prejudice defendant's case.

The State urges us to conclude that trial counsel's performance, even if objectively deficient, did not result in prejudice to defendant, but merely constituted harmless error. The State argues that if the original interview had been suppressed, the State would still have been able to produce Dan Richards, Kyle Bushnell, and Marty Prescott, who would testify at trial that defendant told them about the events of March 17, 1992, as well as his sexual problems and fantasies. Thus, the State contends that suppression of the original interview would have no impact on the outcome.[14] The State's argument is belied by the fact that at trial the State relied heavily on the statements defendant made during the interrogation, while only calling one of the

---

**13.** Even at that, the testimony of the girls was not entirely consistent. One of the girls was unable to identify the man she saw in the doorway. The children agreed that the man they saw was completely naked, but disagreed as to the outwardly apparent manifestations of his state of arousal.

**14.** Defendant raises a closely related issue, one likely to surface on remand, which we may therefore properly touch upon even though we need not reach it given our disposition of the appeal. *See, e.g., State v. Emmett,* 839 P.2d 781, 786 (Utah 1992); *State v. James,* 819 P.2d 781, 795 (Utah 1991); *State v. Tarafa,* 720 P.2d 1368, 1370 (Utah 1986).

Defendant contends the subsequent discussions between defendant and Trooper Dan Rich-

ards, Trooper Kyle Bushnell, and Officer Marty Prescott are necessarily inadmissible as "fruits of a poisonous tree," i.e., the interview. Although we express no definitive opinion on this issue, we note that defendant's position is far from being untenable. As we glean from the record, absent the fear of salacious rumors of his sexual problems spreading among his colleagues following the candid admissions made during the interview, defendant would most likely not have discussed the incident with anyone, just as he had never before seen fit to discuss his sexual problems with his colleagues. The subsequent disclosures appear to have been a misguided effort at damage control that, but for the admissions made in the interview, would likely not have been made.

witnesses, Marty Prescott, to testify as to the conversation that she had with defendant about the incident. Defendant's admissions during the police interrogation were so likely to inflame the jury that we cannot confidently state that defendant received a fair trial.

Based on our review of the evidence we conclude that, had trial counsel performed effectively and secured the suppression of the original interview, a reasonable probability exists that the jury's verdict would have been more favorable to defendant.

## CONCLUSION

Defendant was subjected to a custodial interrogation when the police questioned him at the Center. He was therefore entitled to the appropriate *Miranda* warnings regardless of any personal knowledge he may have had concerning his rights. Trial counsel's failure to timely file a motion to suppress all statements made by defendant during this police interrogation constituted ineffective assistance of counsel. We therefore reverse and remand for a new trial or such other proceedings as may now be appropriate.

BILLINGS and GARFF, JJ., concur.